**E-FILED**
Thursday, 23 June, 2016  03:43:48 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA, ILLINOIS

| | |
|---|---|
| MILTON RHODES, JUSTINA M. MCLEMORE, MARK V. WATSON and JAMES AUSTIN, ) ) ) | |
| Plaintiffs, ) | **JURY DEMAND** |
| ) | Case No. 16-CV-_____ |
| v. ) ) | |
| MITSUBISHI MOTOR MANUFACTURING OF AMERICA, INC. ) ) ) | |
| Defendant. | |

## COMPLAINT AT LAW

NOW COME, the Plaintiffs, MILTON RHODES, JUSTINA M. MCLEMORE, MARK

V. WATSON and JAMES AUSTIN by their counsel, Costigan & Wollrab, P.C., (collectively

referred to herein as "Plaintiffs") and for their Complaint at Law against Defendant,

MITSUBISHI MOTOR MANUFACTURING OF AMERICA, INC., a Delaware corporation,

("MITSUBISHI") hereby state as follows:

### COUNT I

### (PLAINTIFF, MILTON RHODES)

NOW COMES the Plaintiff, MILTON RHODES, ("RHODES") and for Count I of the

Complaint at Law filed herein hereby states the following:

**I.      JURISDICTION**

1.      Jurisdiction is proper pursuant to 28 U.S.C. Sections 451, 1331, 1337, 1343 and

1345.  This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination

in Employment Act of 1967, as amended, 29 U.S.C. Section 621 *et seq.,* (the "ADEA") which

incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the

"FSLA"), as amended, 29 U.S.C. Sections 201, 216(c) and 217.  The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Central District of Illinois.

2.     RHODES has complied with all administrative prerequisites by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"); and RHODES has received a right to sue letter from the EEOC, a copy of which is attached hereto and incorporated herein by reference as Exhibit "A".

3.     This Complaint is being brought within ninety (90) days of RHODES' receipt of the right to sue letter, which letter was received by RHODES on or about March 26, 2016.

**II.     VENUE**

4.     Venue is proper pursuant to 28 U.S.C.A §1391(b), in that the claims arose in McLean County, Illinois and in this district as alleged below.

**III.     PARTIES**

5.     At all times relevant to this Complaint, RHODES was a citizen of the United States and a resident of McLean County.

6.     At all times relevant to this Complaint, MITSUBISHI had continuously been a Delaware corporation doing business in the State of Illinois and the City of Normal, Illinois, and has continuously had at least twenty (20) employees.

7.     At all relevant times, MITSUBISHI has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 11(b), (g) and (h) of the ADEA, 29 U.S.C. Section 621 *et seq*., and Section 11(b), (g) and (h).

8.      That at all times relevant to this Complaint, RHODES was an employee of MITSUBISHI.

## IV.   FACTS

9.      That at all times relevant to this Complaint, RHODES was employed by MITSUBISHI beginning in or around August of 1988 and continuing to November 30, 2015, on which date his employment ended due to MITSUBISHI's decision to close its facility located in Normal, McLean County, Illinois ("Plant Closure").

10.     That at all times prior to the Plant Closure, RHODES performed his duties satisfactorily throughout his years of employment with MITSUBISHI to the date of the Plant Closure.

11.      At all times relevant to this Complaint, RHODES was a member of a protected group in that he was fifty-six (56) years of age; over the age of forty () and under the age of fifty-seven (57) years of age.

12.     That at all times relevant to this Complaint, RHODES, as an employee of MITSUBISHI, became vested in certain employee benefits, including but not limited to benefits provided to RHODES pursuant to the employee benefit plan(s) and personnel plan(s) sponsored by MITSUBISHI for its employees, including RHODES.

13.     At all times relevant to this Complaint, RHODES performance and service to MITSUBISHI was as good as that of other similarly situated employees who were under the age of forty (40) or who received more favorable benefits under the employee severance plan extended to associates of MITSUBISHI during the period up to the Plant Closure.

14.     That on or about October 15, 2015, RHODES received a "Supplemental Separation Notice," indicating that vehicle production and certain staff functions would cease at MITSUBISHI as of the close of business on November 30, 2015.  At that time, 848 Regular

Associates, 32 Supplemental Workers and 126 Staff Employees were expected to be affected by the Plant Closure.

15.     That on or about October 15, 2015, RHODES also received a summary of the severance package, including, the Severance Package Letter of Understanding, Separation Agreement and Release for Associates, Question and Answer Sheet, Benefits Sheet and a Career Link Survey.

16.     RHODES was advised by MITSUBISHI that he was required to turn in the signed Separation Agreement and Release for Associates, no later than 4:00 p.m. on November 30, 2015, in order for RHODES to be entitled to any further compensation from MITSUBISHI.

17.     Upon information and belief, the Separation Agreement, and in particular the terms and conditions affecting older workers including RHODES, who were aged fifty-four (54) to fifty-six (56), were discriminated against in their receipt of employee sponsored benefits, including but not limited to benefits afforded to MITSUBISHI employees under its employer sponsored employee benefit plans, personnel benefit plans, and the employee pension plan provided to employees of MITSUBISHI. The factors utilized by MITSUBISHI in formulating the payment of employee benefits to older workers, including RHODES, were not based on any reasonable factors other than age; and therefore the actions of MITSUBISHI were discriminatory and caused disparate impact to those persons aged fifty-four (54) to fifty-six (56) affected by the Plant Closure.

18.     Upon information and belief RHODES states that MITSUBISHI used a formula for determining severance benefits and pension plan benefits that included, consideration of RHODES age of fifty-six (56), which age determinate resulted in a discriminatory practice affecting older workers who were in the age group of over forty (40) years of age and under

4

fifty-seven (57) years of age in a manner that violated the applicable provisions of the ADEA and also led to disparate impact and disparate treatment of those associates in the over forty (40) years of age and under fifty-seven (57) years of age with respect to receipt of employee benefits, pension benefits and other related vested employee benefits RHODES and others in his age group should have received.

19.     In addition, upon information and belief, RHODES states that MITSUBISHI's formula for determining the employee benefits offered to older workers, including RHODES, was discriminatory in that it used an older worker's age as a means to discriminate against the class of workers in the age bracket from age fifty-four (54) to age fifty-six (56) as that was the largest population of employees of MITSUBISHI affected by the Plant Closure; which actions were in violation of the applicable provisions of the ADEA and also other federal laws protecting an employee's pension benefit rights and which actions had a disparate impact on those workers which factors were unreasonable as applied by MITSUBISHI to RHODES and others similarly situated, including but not limited to the other Plaintiffs alleging actions herein, whose claims arise out of the same series of transactions and occurrences as alleged by RHODES in this action.

20.     The effect of the practices complained of above has been to deprive RHODES of equal employment opportunities and employee benefits and otherwise adversely affect his status as a displaced older worker and past employee of MITSUBISHI and divest him of any opportunity to receive employee benefits in a similar amount to those employees of MITSUBISHI who received compensation in a substantially greater sum than the amount received by RHODES and in violation of the protections afforded to RHODES under the applicable provisions of the ADEA and other applicable federal laws prohibiting discrimination

against employees on the basis of the employees' inclusion in a protected class, including but not limited to the class of workers over the age of forty (40) and under the age of fifty-seven (57).

21.     By its conduct described herein, MITSUBISHI engaged in unlawful employment practices, including as set forth herein and in particular in violation of Section 4(a)(2) of the ADEA, 29 U.S.C. Section 623(a)(2), and other related provisions due to RHODES' age.

22.     The unlawful employment practices complained of above were willful and within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

WHEREFORE, on the basis of the foregoing, Plaintiff, MILTON RHODES, respectfully requests that this Court enter an order granting MILTON RHODES the following relief:

A.  Grant a permanent injunction enjoining MITSUBISHI from engaging in the conduct described above and any employment practice which discriminates on the basis of age against individuals as described herein;

B.  Grant an award in favor of Plaintiff, MILTON RHODES for compensatory damages, including attorneys' fees and costs, in an amount which will fully and fairly compensate him for his injuries and damages including but not limited to back pay, front pay, employee benefits and other emoluments of employment and such other relief as this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON COUNT I OF THIS COMPLAINT**.

## COUNT II

### (PLAINTIFF, JUSTINA M. MCLEMORE)

NOW COMES the Plaintiff, JUSTINA M. MCLEMORE ("MCLEMORE") and for

Count II of the Complaint at Law filed herein hereby states the following:

**I.     JURISDICTION**

1.      Jurisdiction is proper pursuant to 28 U.S.C. Sections 451, 1331, 1337, 1343 and

1345.  This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination

in Employment Act of 1967, as amended, 29 U.S.C. Section 621 *et seq.,* (the "ADEA") which

incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the

"FSLA"), as amended, 29 U.S.C. Sections 201, 216(c) and 217.  The unlawful employment

practices alleged below were committed within the jurisdiction of the United States District

Court for the Central District of Illinois.

2.      MCLEMORE has complied with all administrative prerequisites by filing a timely

Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"); and

MCLEMORE has received a right to sue letter from the EEOC, a copy of which is attached

hereto and incorporated herein by reference as Exhibit "B".

3.      This Complaint is being brought within ninety (90) days of MCLEMORE'S

receipt of the right to sue letter, which letter was received by MCLEMORE on or about March

26, 2016.

**II.     VENUE**

4.      Venue is proper pursuant to 28 U.S.C.A §1391(b), in that the claims arose in

McLean County, Illinois and in this district as alleged below.

### III.  PARTIES

5.     At all times relevant to this Complaint, MCLEMORE was a citizen of the United States and a resident of McLean County.

6.     At all times relevant to this Complaint, MITSUBISHI had continuously been a Delaware corporation doing business in the State of Illinois and the City of Normal, Illinois, and has continuously had at least twenty (20) employees.

7.     At all relevant times, MITSUBISHI has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 11(b), (g) and (h) of the ADEA, 29 U.S.C. Section 621 *et seq.*, and Section 11(b), (g) and (h).

8.      That at all times relevant to this Complaint, MCLEMORE was an employee of MITSUBISHI.

### IV.  FACTS

9.     That at all times relevant to this Complaint, MCLEMORE was employed by MITSUBISHI beginning on or about May 1, 1990 and continuing to November 30, 2015, on which date her employment ended due to MITSUBISHI's decision to close its facility located in Normal, McLean County, Illinois ("Plant Closure").

10.     That at all times prior to the Plant Closure, MCLEMORE performed her duties satisfactorily throughout her years of employment with MITSUBISHI to the date of the Plant Closure.

11.      At all times relevant to this Complaint, MCLEMORE was a member of a protected group in that she was fifty-five (55) years of age; over the age of forty (40) and under the age of fifty-seven (57) years of age.

12.     That at all times relevant to this Complaint, MCLEMORE, as an employee of MITSUBISHI, became vested in certain employee benefits, including but not limited to benefits provided to MCLEMORE pursuant to the employee benefit plan(s) and personnel plan(s) sponsored by MITSUBISHI for its employees, including MCLEMORE.

13.     At all times relevant to this Complaint, MCLEMORE'S performance and service to MITSUBISHI was as good as that of other similarly situated employees who were under the age of forty (40) or who received more favorable benefits under the employee severance plan extended to associates of MITSUBISHI during the period up to the Plant Closure.

14.     That on or about October 15, 2015, MCLEMORE received a "Supplemental Separation Notice," indicating that vehicle production and certain staff functions would cease at MITSUBISHI as of the close of business on November 30, 2015.  At that time, 848 Regular Associates, 32 Supplemental Workers and 126 Staff Employees were expected to be affected by the Plant Closure.

15.     That on or about October 15, 2015, MCLEMORE also received a summary of the severance package, including, the Severance Package Letter of Understanding, Separation Agreement and Release for Associates, Question and Answer Sheet, Benefits Sheet and a Career Link Survey.

16.     MCLEMORE was advised by MITSUBISHI that she was required to turn in the signed Separation Agreement and Release for Associates, no later than 4:00 p.m. on November 30, 2015, in order for MCLEMORE to be entitled to any further compensation from MITSUBISHI.

17.     Upon information and belief, the Separation Agreement, and in particular the terms and conditions affecting older workers including MCLEMORE, who were aged fifty-four

9

(54) to fifty-six (56), were discriminated against in their receipt of employee sponsored benefits, including but not limited to benefits afforded to MITSUBISHI employees under its employer sponsored employee benefit plans, personnel benefit plans, and the employee pension plan provided to employees of MITSUBISHI. The factors utilized by MITSUBISHI in formulating the payment of employee benefits to older workers, including MCLEMORE, were not based on any reasonable factors other than age; and therefore the actions of MITSUBISHI were discriminatory and caused disparate impact to those persons aged fifty-four (54) to fifty-six (56) affected by the Plant Closure.

18.     Upon information and belief, MCLEMORE states that MITSUBISHI used a formula for determining severance benefits and pension plan benefits that included, consideration of MCLEMORE'S age of over fifty-four and under fifty-seven (57), which age determinate resulted in a discriminatory practice affecting older workers who were in the age group of over forty (40) years of age and under fifty-seven (57) years of age in a manner that violated the applicable provisions of the ADEA and also led to disparate impact and disparate treatment of those associates in the over forty (40) years of age and under fifty-seven (57) years of age with respect to receipt of employee benefits, pension benefits and other related vested employee benefits MCLEMORE and others in her age group should have received.

19.     In addition, upon information and belief, MCLEMORE states that MITSUBISHI's formula for determining the employee benefits offered to older workers, including RHODES, was discriminatory in that it used an older worker's age as a means to discriminate against the class of workers in the age bracket from age fifty-four (54) to age fifty-six (56) as that was the largest population of employees of MITSUBISHI affected by the Plant Closure; which actions were in violation of the applicable provisions of the ADEA and also other

federal laws protecting an employee's pension benefit rights and which actions had a disparate impact on those workers which factors were unreasonable as applied by MITSUBISHI to MCLEMORE and others similarly situated, including but not limited to the other Plaintiffs alleging actions herein, whose claims arise out of the same series of transactions and occurrences as alleged by MCLEMORE in this action.

20.     The effect of the practices complained of above has been to deprive MCLEMORE of equal employment opportunities and employee benefits and otherwise adversely affect her status as a displaced older worker and past employee of MITSUBISHI and divest her of any opportunity to receive employee benefits in a similar amount to those employees of MITSUBISHI who received compensation in a substantially greater sum than the amount received by MCLEMORE and in violation of the protections afforded to MCLEMORE under the applicable provisions of the ADEA and other applicable federal laws prohibiting discrimination against employees on the basis of the employees' inclusion in a protected class, including but not limited to the class of workers over the age of forty (40) years of age.

21.     By its conduct described herein, MITSUBISHI engaged in unlawful employment practices, including as set forth herein and in particular in violation of Section 4(a)(2) of the ADEA, 29 U.S.C. Section 623(a)(2), and other related provisions due to MCLEMORE'S age.

22.     The unlawful employment practices complained of above were willful and within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

WHEREFORE, on the basis of the foregoing, Plaintiff, JUSTINA M. MCLEMORE, respectfully requests that this Court enter an order granting JUSTIMA M. MCLEMORE the

following relief:

    C.  Grant a permanent injunction enjoining MITSUBISHI from engaging in the conduct described above and any employment practice which discriminates on the basis of age against individuals as described herein;

    D.  Grant an award in favor of Plaintiff, JUSTINA M. MCLEMORE for compensatory damages, including attorneys' fees and costs, in an amount which will fully and fairly compensate him for his injuries and damages including but not limited to back pay, front pay, employee benefits and other emoluments of employment and such other relief as this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON COUNT II OF THIS COMPLAINT**.

## COUNT III

### (PLAINTIFF, MARK V. WATSON)

NOW COMES the Plaintiff, MARK V. WATSON, ("WATSON") and for Count III of the Complaint at Law filed herein hereby states the following:

**I.    JURISDICTION**

1.    Jurisdiction is proper pursuant to 28 U.S.C. Sections 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Section 621 *et seq.,* (the "ADEA") which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FSLA"), as amended, 29 U.S.C. Sections 201, 216(c) and 217.  The unlawful employment

practices alleged below were committed within the jurisdiction of the United States District Court for the Central District of Illinois.

2.      WATSON has complied with all administrative prerequisites by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"); and WATSON has received a right to sue letter from the EEOC, a copy of which is attached hereto and incorporated herein by reference as Exhibit "C".

3.      This Complaint is being brought within ninety (90) days of WATSON'S receipt of the right to sue letter, which letter was received by WATSON on or about April 4, 2016.

**II.      VENUE**

4.      Venue is proper pursuant to 28 U.S.C.A §1391(b), in that the claims arose in McLean County, Illinois and in this district as alleged below.

**III.      PARTIES**

5.      At all times relevant to this Complaint, WATSON was a citizen of the United States and a resident of McLean County.

6.      At all times relevant to this Complaint, MITSUBISHI had continuously been a Delaware corporation doing business in the State of Illinois and the City of Normal, Illinois, and has continuously had at least twenty (20) employees.

7.      At all relevant times, MITSUBISHI has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 11(b), (g) and (h) of the ADEA, 29 U.S.C. Section 621 *et seq*., and Section 11(b), (g) and (h).

8.       That at all times relevant to this Complaint, WATSON was an employee of MITSUBISHI.

**IV.    FACTS**

9.      That at all times relevant to this Complaint, WATSON was employed by MITSUBISHI beginning in or around 1988 and continuing for periods up to November 30, 2015, on which date his employment ended due to MITSUBISHI's decision to close its facility located in Normal, McLean County, Illinois ("Plant Closure").

10.     That at all times prior to the Plant Closure, when WATSON was working he performed his duties satisfactorily throughout his years of employment with MITSUBISHI.

11.      At all times relevant to this Complaint, WATSON was a member of a protected group in that he was over the age of forty (40) and under the age of fifty-seven (57) years of age.

12.     That at all times relevant to this Complaint, WATSON, as an employee of MITSUBISHI, became vested in certain employee benefits, including but not limited to benefits provided to WATSON pursuant to the employee benefit plan(s) and personnel plan(s) sponsored by MITSUBISHI for its employees, including WATSON.

13.     At all times relevant to this Complaint, WATSON performance and service to MITSUBISHI was as good as that of other similarly situated employees who were under the age of forty (40) or who received more favorable benefits under the employee severance plan extended to associates of MITSUBISHI during the period up to the Plant Closure.

14.     That on or about October 15, 2015, WATSON received a "Supplemental Separation Notice," indicating that vehicle production and certain staff functions would cease at MITSUBISHI as of the close of business on November 30, 2015.  At that time, 848 Regular Associates, 32 Supplemental Workers and 126 Staff Employees were expected to be affected by the Plant Closure.

15.     That on or about October 15, 2015, WATSON also received a summary of the

severance package, including, the Severance Package Letter of Understanding, Separation

Agreement and Release for Associates, Question and Answer Sheet, Benefits Sheet and a Career

Link Survey.

16.     WATSON was advised by MITSUBISHI that he was required to turn in the

signed Separation Agreement and Release for Associates, no later than 4:00 p.m. on November

30, 2015, in order for WATSON to be entitled to any further compensation from MITSUBISHI.

17.     Upon information and belief, the Separation Agreement, and in particular the

terms and conditions affecting older workers including WATSON, who were aged fifty-four (54)

to fifty-six (56), were discriminated against in their receipt of employee sponsored benefits,

including but not limited to benefits afforded to MITSUBISHI employees under its employer

sponsored employee benefit plans, disability plans, personnel benefit plans, and the employee

pension plan provided to employees of MITSUBISHI. The factors utilized by MITSUBISHI in

formulating the payment of employee benefits to older workers, including WATSON, were not

based on any reasonable factors other than age; and therefore the actions of MITSUBISHI were

discriminatory and caused disparate impact to those persons aged fifty-four (54) to fifty-six (56)

affected by the Plant Closure.

18.     Upon information and belief, WATSON states that MITSUBISHI used a formula

for determining severance benefits and pension plan benefits that included, consideration of

WATSON's age of over forty (40) and under fifty-seven (57), which age determinate resulted in

a discriminatory practice affecting older workers who were in the age group of over forty (40)

years of age and under fifty-seven (57) years of age in a manner that violated the applicable

provisions of the ADEA and also led to disparate impact and disparate treatment of those

associates in the over forty (40) years of age and under fifty-seven (57) years of age with respect
to receipt of employee benefits, pension benefits and other related vested employee benefits
WATSON and others in his age group should have received.

19.     In addition, upon information and belief, WATSON states that MITSUBISHI's
formula for determining the employee benefits offered to older workers, including WATSON,
was discriminatory in that it used an older worker's age as a means to discriminate against the
class of workers in the age bracket from age fifty-four (54) to age fifty-six (56) as that was the
largest population of employees of MITSUBISHI affected by the Plant Closure; which actions
were in violation of the applicable provisions of the ADEA and also other federal laws protecting
an employee's pension benefit rights and which actions had a disparate impact on those workers
which factors were unreasonable as applied by MITSUBISHI to WATSON and others similarly
situated, including but not limited to the other Plaintiffs alleging actions herein, whose claims
arise out of the same series of transactions and occurrences as alleged by WATSON in this
action.

20.     The effect of the practices complained of above has been to deprive WATSON of
equal employment opportunities and employee benefits and otherwise adversely affect his status
as a displaced older worker and past employee of MITSUBISHI and divest him of any
opportunity to receive employee benefits in a similar amount to those employees of
MITSUBISHI who received compensation in a substantially greater sum than the amount
received by WATSON and in violation of the protections afforded to WATSON under the
applicable provisions of the ADEA and other applicable federal laws prohibiting discrimination
against employees on the basis of the employees' inclusion in a protected class, including but not
limited to the class of workers over the age of forty (40) and under the age of fifty-seven (57).

21.     By its conduct described herein, MITSUBISHI engaged in unlawful employment practices, including as set forth herein and in particular in violation of Section 4(a)(2) of the ADEA, 29 U.S.C. Section 623(a)(2), and other related provisions due to WATSON'S age.

22.     The unlawful employment practices complained of above were willful and within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

WHEREFORE, on the basis of the foregoing, Plaintiff, MARK V. WATSON, respectfully requests that this Court enter an order granting MARK V. WATSON the following relief:

E.   Grant a permanent injunction enjoining MITSUBISHI from engaging in the conduct described above and any employment practice which discriminates on the basis of age against individuals as described herein;

F.   Grant an award in favor of Plaintiff, MARK V. WATSON for compensatory damages, including attorneys' fees and costs, in an amount which will fully and fairly compensate him for his injuries and damages including but not limited to back pay, front pay, employee benefits and other emoluments of employment and such other relief as this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON COUNT III OF THIS COMPLAINT**.

## COUNT IV

## (PLAINTIFF, JAMES AUSTIN)

NOW COMES the Plaintiff, JAMES AUSTIN, ("AUSTIN") and for Count IV of the Complaint at Law filed herein hereby states the following:

**I.     JURISDICTION**

1.      Jurisdiction is proper pursuant to 28 U.S.C. Sections 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Section 621 *et seq.,* (the "ADEA") which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FSLA"), as amended, 29 U.S.C. Sections 201, 216(c) and 217.  The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Central District of Illinois.

2.      AUSTIN has complied with all administrative prerequisites by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"); and AUSTIN has received a right to sue letter from the EEOC, a copy of which is attached hereto and incorporated herein by reference as Exhibit "D".

3.      This Complaint is being brought within ninety (90) days of AUSTIN'S receipt of the right to sue letter, which letter was received by AUSTIN on or about March 26, 2016.

**II.    VENUE**

4.      Venue is proper pursuant to 28 U.S.C.A §1391(b), in that the claims arose in McLean County, Illinois and in this district as alleged below.

### III.    PARTIES

5.     At all times relevant to this Complaint, AUSTIN was a citizen of the United States and a resident of McLean County.

6.     At all times relevant to this Complaint, MITSUBISHI had continuously been a Delaware corporation doing business in the State of Illinois and the City of Normal, Illinois, and has continuously had at least twenty (20) employees.

7.     At all relevant times, MITSUBISHI has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 11(b), (g) and (h) of the ADEA, 29 U.S.C. Section 621 *et seq*., and Section 11(b), (g) and (h).

8.      That at all times relevant to this Complaint, AUSTIN was an employee of MITSUBISHI.

### IV.    FACTS

9.     That at all times relevant to this Complaint, AUSTIN was employed by MITSUBISHI beginning in or around 1988 and continuing to November 30, 2015, on which date his employment ended due to MITSUBISHI's decision to close its facility located in Normal, McLean County, Illinois ("Plant Closure").

10.      That at all times prior to the Plant Closure, AUSTIN performed his duties satisfactorily throughout his years of employment with MITSUBISHI to the date of the Plant Closure

11.      At all times relevant to this Complaint, AUSTIN was a member of a protected group in that he was over the age of forty (40) and under the age of fifty-seven (57) years of age.

12.     That at all times relevant to this Complaint, AUSTIN, as an employee of MITSUBISHI, became vested in certain employee benefits, including but not limited to benefits

provided to AUSTIN pursuant to the employee benefit plan(s) and personnel plan(s) sponsored by MITSUBISHI for its employees, including AUSTIN.

13.     At all times relevant to this Complaint, AUSTIN performance and service to MITSUBISHI was as good as that of other similarly situated employees who were under the age of forty (40) or who received more favorable benefits under the employee severance plan extended to associates of MITSUBISHI during the period up to the Plant Closure.

14.     That on or about October 15, 2015, AUSTIN received a "Supplemental Separation Notice," indicating that vehicle production and certain staff functions would cease at MITSUBISHI as of the close of business on November 30, 2015.  At that time, 848 Regular Associates, 32 Supplemental Workers and 126 Staff Employees were expected to be affected by the Plant Closure.

15.     That on or about October 15, 2015, AUSTIN also received a summary of the severance package, including, the Severance Package Letter of Understanding, Separation Agreement and Release for Associates, Question and Answer Sheet, Benefits Sheet and a Career Link Survey.

16.     AUSTIN was advised by MITSUBISHI that he was required to turn in the signed Separation Agreement and Release for Associates, no later than 4:00 p.m. on November 30, 2015, in order for AUSTIN to be entitled to any further compensation from MITSUBISHI.

17.     Upon information and belief, the Separation Agreement, and in particular the terms and conditions affecting older workers including AUSTIN, who were aged fifty-four (54) to fifty-six (56), were discriminated against in their receipt of employee sponsored benefits, including but not limited to benefits afforded to MITSUBISHI employees under its employer sponsored employee benefit plans, disability plans, personnel benefit plans, and the employee

pension plan provided to employees of MITSUBISHI. The factors utilized by MITSUBISHI in formulating the payment of employee benefits to older workers, including AUSTIN, were not based on any reasonable factors other than age; and therefore the actions of MITSUBISHI were discriminatory and caused disparate impact to those persons aged fifty-four (54) to fifty-six (56) affected by the Plant Closure.

18.     Upon information and belief, AUSTIN states that MITSUBISHI used a formula for determining severance benefits and pension plan benefits that included, consideration of WATSON's age of over forty (40) and under fifty-seven (57), which age determinate resulted in a discriminatory practice affecting older workers who were in the age group of over forty (40) years of age and under fifty-seven (57) years of age in a manner that violated the applicable provisions of the ADEA and also led to disparate impact and disparate treatment of those associates in the over forty (40) years of age and under fifty-seven (57) years of age with respect to receipt of employee benefits, pension benefits and other related vested employee benefits WATSON and others in his age group should have received.

19.     In addition, upon information and belief, AUSTIN states that MITSUBISHI's formula for determining the employee benefits offered to older workers, including AUSTIN, was discriminatory in that it used an older worker's age as a means to discriminate against the class of workers in the age bracket from age fifty-four (54) to age fifty-six (56) as that was the largest population of employees of MITSUBISHI affected by the Plant Closure; which actions were in violation of the applicable provisions of the ADEA and also other federal laws protecting an employee's pension benefit rights and which actions had a disparate impact on those workers which factors were unreasonable as applied by MITSUBISHI to AUSTIN and others similarly

situated, including but not limited to the other Plaintiffs alleging actions herein, whose claims arise out of the same series of transactions and occurrences as alleged by AUSTIN in this action.

20.     The effect of the practices complained of above has been to deprive AUSTIN of equal employment opportunities and employee benefits and otherwise adversely affect his status as a displaced older worker and past employee of MITSUBISHI and divest him of any opportunity to receive employee benefits in a similar amount to those employees of MITSUBISHI who received compensation in a substantially greater sum than the amount received by AUSTIN and in violation of the protections afforded to AUSTIN under the applicable provisions of the ADEA and other applicable federal laws prohibiting discrimination against employees on the basis of the employees' inclusion in a protected class, including but not limited to the class of workers over the age of forty (40) and under the age of fifty-seven (57).

21.     By its conduct described herein, MITSUBISHI engaged in unlawful employment practices, including as set forth herein and in particular in violation of Section 4(a)(2) of the ADEA, 29 U.S.C. Section 623(a)(2), and other related provisions due to AUSTIN'S age.

22.     The unlawful employment practices complained of above were willful and within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

WHEREFORE, on the basis of the foregoing, Plaintiff, JAMES AUSTIN, respectfully requests that this Court enter an order granting JAMES AUSTIN the following relief:

G.  Grant a permanent injunction enjoining MITSUBISHI from engaging in the conduct described above and any employment practice which discriminates on the basis of age against individuals as described herein;

H.  Grant an award in favor of Plaintiff, JAMES AUSTIN for compensatory damages, including attorneys' fees and costs, in an amount which will fully

and fairly compensate him for his injuries and damages including but not limited to back pay, front pay, employee benefits and other emoluments of employment and such other relief as this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON COUNT IV OF THIS COMPLAINT**.

Respectfully Submitted,

Plaintiffs, MILTON RHODES,
JUSTINA M. MCLEMORE,
MARK V. WATSON and
JAMES AUSTIN,


BY: s/Dawn L. Wall
Dawn L. Wall, Bar No. 6196948
Costigan & Wollrab, P.C
308 E. Washington Street
PO Box 3127
Bloomington, IL 61702-3127
TEL: 309-828-4310
FAX: 309-828-4325
dwall@cwlawoffice.com